UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

**EVONNA PRICE,**

       Plaintiff,

v.                                                                                    Case No. 1:26-cv-1401
                                                                                         Hon.

**HUMAN LEARNING SYSTEMS, LLC,**

       Defendant.

_____/

SOMMERS SCHWARTZ, P.C.
Tad T. Roumayah (P74081)
Nathan A. Robbins (P87794)
Attorneys for Plaintiff
One Towne Square, Suite 1700
Southfield, Michigan 48076
(248) 355-0300
troumayah@sommerspc.com
nrobbins@sommerspc.com

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, Evonna Price ("PRICE"), by and through her attorneys, Sommers Schwartz, P.C., and for her Complaint against Defendant, Human Learning Systems, LLC ("HLS"), states as follows:

## PARTIES

1.  Plaintiff, PRICE, is an individual who resides in the City of Grand Rapids, Kent County, State of Michigan.

1

2.     Defendant, HLS, is incorporated in the State of Georgia and maintains its principal place of business in the City of Decatur, DeKalb County, State of Georgia.

## JURISDICTION

3.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

4.     The Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because they originate from the same facts that form the basis of her federal claims.

5.     This Court has personal jurisdiction over Defendant because Defendant conducts business within the state of Michigan and employed Plaintiff and other individuals within the state of Michigan.

6.     Venue is proper in this jurisdiction pursuant to 28 U.S.C. § 1391 because Defendant employed Plaintiff in this District, conducts business in this District, and the actions and omissions giving rise to the claims pled in this Complaint substantially occurred in this District.

## GENERAL ALLEGATIONS

7.     PRICE is a thirty-one-year-old hardworking woman and diligent employee.

8.    PRICE began her employment with HLS on July 7, 2025 as its Residential Advisor.

9.    HLS is a corporation and government contractor that operates the Gerald R. Ford Job Corps Center in Grand Rapids, Michigan.

10.    The Gerald R. Ford Job Corps Center, as operated by HLS, provides teens and young adults with various programs and services including housing, job training, and educational opportunities.

11.    At all times, PRICE performed her position at HLS in an exemplary manner.

12.    HLS never provided PRICE with any write-ups, warnings, or discipline.

13.    Throughout PRICE's employment, HLS subjected PRICE to repeated and blatant sexual harassment at the hands of multiple male employees.

14.    At all times, the sexual harassment created a hostile work environment for PRICE which substantially interfered with her employment.

15.    On multiple occasions, PRICE reported the sexually harassing conduct to HLS.

16.    Nevertheless, HLS failed to take care to prevent, stop, correct, or address the sexual harassment and, instead, retaliated against PRICE.

17.    On or about July 16, 2025, PRICE met Ms. Mayweather (Security Guard).

18.    Upon speaking with Ms. Mayweather, Ms. Mayweather informed PRICE that the male security guards at HLS had been lewdly discussing PRICE's body and physical appearance while at the security guard station.

19.    Specifically, Ms. Mayweather stated that the male security guards referred to PRICE as "thick" and commented that PRICE "[had a] nice ass."

20.    PRICE immediately informed Ms. Mayweather that she believed the comments of the security guards were sexually inappropriate.

21.    In response, Ms. Mayweather stated, "they are harmless. You know how men are."

22.    PRICE promptly reported the sexually inappropriate comments, as communicated by Ms. Mayweather, to her direct supervisor, Ms. Sanders.

23.    On or about July 18, 2025, PRICE worked an overnight shift in the male dormitories.

24.    During her shift, PRICE encountered Mr. Frierson (Residential Advisor).

25.    Mr. Frierson leered at PRICE and stated, "Damn, why would you wear that dress in a male dorm?"

26. Mr. Frierson made the statement in a sexually suggestive manner and tone of voice.

27. In response, PRICE informed Mr. Frierson that her outfit was work appropriate.

28. Mr. Frierson's sexually suggestive statement made PRICE deeply uncomfortable.

29. PRICE immediately reported Mr. Frierson's sexually harassing conduct to Ms. Sanders.

30. In response, Ms. Sanders confirmed that PRICE's attire was appropriate for work.

31. Ms. Sanders took a photo of PRICE's outfit to document that PRICE had been wearing work-appropriate attire.

32. Further, Ms. Sanders informed PRICE that Mr. Frierson "[had a] history" of engaging in sexually harassing and sexually inappropriate behavior against female employees.

33. Ms. Sanders assured PRICE that PRICE's complaint of sexual harassment would be reported and escalated to the Department Manager, Ms. Williamson.

34.    Nevertheless, HLS did not provide Mr. Frierson with any form of discipline or reprimand for the sexually inappropriate conduct he engaged in on or about July 18, 2025.

35.    On or about July 19, 2025, Mr. Credit (Security Guard) entered the male dormitories where PRICE was working alone.

36.    Mr. Credit's job responsibilities required that he patrol the building or remain at the Security Guard Station and did not require that he sit down in or near PRICE's workspace.

37.    Nevertheless, Mr. Credit sat down in the same room as PRICE.

38.    Mr. Credit continually leered at PRICE for several minutes.

39.    Furthermore, Mr. Credit began making sexually inappropriate statements to PRICE.

40.    Mr. Credit told PRICE in a suggestive manner, "You look good."

41.    Mr. Credit told PRICE, "You know there aren't any cameras in the office. You should be careful."

42.    Mr. Credit's inappropriate and sexually suggestive comments made PRICE deeply uncomfortable.

43.    Several minutes later, Ms. Sanders entered the room with Mr. Credit and PRICE.

44.   Mr. Credit promptly stood up and left the room upon Ms. Sanders entering.

45.   Immediately thereafter, Ms. Sanders stated, "[Mr. Credit] never comes to the third floor. That is very strange. He was only up here to see you."

46.   On or about July 19, 2025, Mr. Gordon (Residential Advisor) entered the office where PRICE was working, while speaking on his cell phone with Mr. Frierson.

47.   The phone call between Mr. Gordon and Mr. Frierson was on speakerphone and clearly audible to PRICE.

48.   During the conversation, Mr. Frierson stated, "You didn't tell me Ms. Fine Shit had a fat ass."

49.   Mr. Gordon responded by asking who Mr. Frierson was referring to as "Ms. Fine Shit."

50.   Mr. Frierson replied, "Ms. Price. I would fuck the shit out of her."

51.   Mr. Gordon quickly ended the phone call after Mr. Frierson's absurd and sexually inappropriate comments.

52.   PRICE reported Mr. Frierson's sexually harassing conduct to Ms. Sanders.

53.   Ms. Sanders claimed that she would report and escalate PRICE's complaint of sexual harassment to Ms. Williamson.

7

54.    Nevertheless, HLS did not provide Mr. Frierson with any form of discipline or reprimand for the sexually inappropriate conduct he engaged in on or about July 19, 2025.

55.    Soon thereafter, PRICE learned that Mr. Frierson had spread the pseudonym he and other HLS employees had created for PRICE (i.e., "Ms. Fine Shit" or "Fine Shit") among the staff and residents at HLS's place of operation (i.e., the Gerald R. Ford Job Corps Center in Grand Rapids, Michigan).

56.    Indeed, youth residents began regularly greeting PRICE as "Ms. Fine Shit."

57.    Moreover, PRICE, on multiple occasions, observed youth residents referring to her as "Ms. Fine Shit."

58.    At all times, the pseudonym "Ms. Fine Shit" was sexually inappropriate and made reference to PRICE's body and physical appearance.

59.    On or about July 20, 2025, Ms. Williamson sent a text message to PRICE stating, "I'm also aware of the concern you have regarding comments made by staff. I will follow up on this issue too. Staff may need a reminder of the harassment policy."

60.    Nevertheless, neither Ms. Williamson nor HLS ever circulated information regarding the sexual harassment policy.

8

61. Furthermore, neither Ms. Williamson nor HLS ever provided a "reminder" to staff concerning compliance with any sexual harassment policy.

62. On or about July 20, 2025, Mr. Gordon sent PRICE a message via Facebook Messenger.

63. Mr. Gordon, in his message, stated, "Not even on no weird shit but when I walked you [sic] I noticed you Bad [as fuck]!! I see why they be around you."

64. Thereafter, PRICE reported to Ms. Sanders the sexually suggestive content of Mr. Gordon's social media message.

65. On or about August 1, 2025, PRICE met with Ms. Williamson to further report the sexual harassment she had been experienced during her employment with HLS.

66. During the same meeting with Ms. Williamson, PRICE expressed concern with HLS's failure to take remedial action to correct or stop the sexual harassment.

67. In response, Ms. Williamson merely informed PRICE that HLS would reassign PRICE to work in the female dormitories.

68. Significantly, the position in the female dormitories was distinguishable from the position PRICE applied for and was hired to perform.

69. Specifically, the reassignment resulted in material alterations to PRICE's work schedule.

9

70.    Soon thereafter, PRICE began working in the female dormitories.

71.    Upon beginning to work in the female dormitories, PRICE learned that she was located much closer to the Security Guard Station.

72.    Furthermore, PRICE's desk was positioned such that it was in plain view of the Security Guard Station.

73.    Mr. Credit, who had previously sexually harassed PRICE, worked at the Security Guard Station.

74.    Accordingly, HLS's reassignment of PRICE placed her in closer proximity to Mr. Credit, despite HLS having knowledge that Mr. Credit had sexually harassed PRICE.

75.    Unsurprisingly, Mr. Credit regularly walked by PRICE's desk and leered at her.

76.    Around that same time, HLS's Security Guards, for the first time, began requiring PRICE to be the subject of unnecessary, unwarranted, and invasive physical searches and pat-downs of her person when she entered the building.

77.    The Security Guards repeatedly conducted these searches wherein they physically touched PRICE and patted down PRICE's clothing over her body, including her breasts and buttocks.

78.    In or about August 2025, PRICE experienced severe anxiety, stress, and panic about continuing to report to work at HLS because of the sexual harassment

HLS had subjected her to and without taking any meaningful action to stop the sexual harassment.

79. On or about August 17, 2025, PRICE experienced severe anxiety and distress because of the sexual harassment she experienced and her well-founded belief that she was not safe at work and would be subjected to additional sexual harassment.

80. As a result, PRICE sent Ms. Sanders a text message advising she would not be able to attend work.

81. Soon thereafter, PRICE spoke with Ms. Sanders by way of a phone call.

82. During the phone call, PRICE expressed concern to Ms. Sanders that the sexual harassment she had been subjected to had not been addressed or corrected.

83. Furthermore, PRICE explained to Ms. Sanders that she did not feel safe or comfortable working in close proximity to HLS employees who had continually sexually harassed her.

84. However, Ms. Sanders did not provide any indication that HLS would take steps to ensure the sexual harassment would stop or be addressed.

85. As a result of HLS's lack of action and the ongoing sexual harassment PRICE had been subjected to, on or about August 18, 2025 and August 19, 2025, PRICE informed HLS that she was unable to report to work.

86.    On or about August 20, 2025, Latonya Cain (Human Resources Manager) contacted PRICE by way of a phone call.

87.    During the phone call, Ms. Cain advised that she was inquiring into PRICE's absences on August 17, 18, and 19.

88.    In response, PRICE informed Ms. Cain that she had called off work because she felt unsafe at work based on the flagrant sexual harassment HLS had subjected her to at the hands of multiple male employees, and based on HLS's failure to correct or address the sexual harassment after her complaints and reports of the same.

89.    Ms. Cain advised that she had no knowledge of PRICE's complaints and reports of sexual harassment.

90.    As a result, PRICE explained to Ms. Cain several instances of sexually inappropriate behavior she had experienced during her employment with HLS.

91.    In addition, PRICE explained to Ms. Cain that she had previously reported this conduct to Ms. Sanders and Ms. Williamson.

92.    Furthermore, PRICE reiterated that she did not feel safe reporting to work because of the severe and pervasive sexual harassment she had been subjected to and HLS's failure to remedy or stop the sexual harassment.

93.    Inexplicably, Ms. Cain responded by instructing PRICE to email a resignation letter to HLS and to return her (PRICE's) badge and keys to HLS.

94.    PRICE informed Ms. Cain that she did not wish to resign from her employment with HLS.

95.    PRICE did not submit a resignation letter.

96.    Nevertheless, HLS terminated PRICE's employment and did not contact PRICE again.

97.    On or about October 29, 2025, PRICE, through her counsel, filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

98.    On or about February 9, 2026, the EEOC issued PRICE a Notice of Right to Sue.

## **COUNT I: HOSTILE WORK ENVIRONMENT SEXUAL HARASSMENT IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

## **AND**

## **COUNT II: HOSTILE WORK ENVIRONMENT SEXUAL HARASSMENT IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT**

99.    PRICE incorporates Paragraphs 1 through 98 of this Complaint.

100.    Title VII and the ELCRA prohibit employers from discriminating against any individual because of or on the basis of sex. 42 U.S.C. § 2000e-2(a)(1); MCL § 37.2202(a).

101.    HLS is an employer under Title VII and the ELCRA. 42 U.S.C. § 2000e(b); MCL § 37.2201(a).

102.    To establish a claim for hostile work environment sexual harassment under Title VII, a plaintiff must prove: 1) the employee is a member of a protected class; 2) the employee was subject to unwelcomed sexual harassment; 3) the harassment was based on the employee's sex; 4) the harassment created a hostile work environment; and 5) the employer failed to take reasonable care to prevent and correct any sexually harassing behavior. *Bowman v. Shawnee State Univ.*, 220 F.3d 456, 462 (6th Cir. 2000).

103.    Under the ELCRA: "Discrimination because of sex includes sexual harassment" and "[s]exual harassment means unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct or communication of a sexual nature under the following conditions … the conduct or communication has the purpose or effect of substantially interfering with an individual's employment." MCL § 37.2103(k)(iii).

104.    PRICE is a woman and a member of a protected class based on her sex.

105.    PRICE was repeatedly subjected to egregious and unwelcome sexual harassment based on her sex, which sexual harassment includes but is not limited to:

   a. Crude and inappropriate remarks by multiple male employees regarding her appearance, her clothing, and her body.

   b. Male HLS employees making suggestive and sexually inappropriate comments to PRICE.

14

c. Male HLS employees referring to PRICE by the sexually inappropriate pseudonym "Ms. Fine Shit."

d. Male HLS employees spreading usage of the pseudonym "Ms. Fine Shit" to residents of the Gerald R. Ford Job Corps Center.

e. Mr. Frierson stating he would, "fuck the shit out of [PRICE]."

f. Male HLS employees leering at PRICE on multiple occasions.

g. Male HLS employees conducting unnecessary, unwarranted, and invasive physical searches and pat-downs of PRICE's person, including her breasts and buttocks.

h. Male HLS employees otherwise directing unwelcome comments of an offensive and sexual nature at PRICE and creating a hostile work environment for PRICE.

106.  At all times, the sexual harassment HLS subjected PRICE to was severe and pervasive and did substantially interfere with PRICE's employment at HLS.

107.  HLS violated PRICE's civil rights under Title VII and the ELCRA by subjecting her to unwelcome, offensive, and sexually harassing conduct that was perpetrated upon PRICE by her coworkers.

108.  HLS had knowledge of the sexual harassment PRICE experienced and failed to take care to prevent or correct the sexual harassment.

109.  Instead, HLS terminated PRICE's employment.

15

110.   As a direct and proximate result of HLS's violations of Title VII and the ELCRA, PRICE has suffered damages, including but not limited to, loss of past and future income and employee benefits, mental anguish, mental and emotional distress, loss of professional reputation, and punitive damages, attorneys' fees, costs, and interest.

**WHEREFORE**, Plaintiff requests that this Court enter its Judgment against Defendant in whatever amount is shown to be established by the proofs in this cause, including lost past and future wages, lost benefits, mental and emotional distress damages, loss of professional reputation, and punitive damages, together with interest, costs, and reasonable attorneys' fees.

## COUNT III: RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

## AND

## COUNT IV: RETALIATION IN VIOLATION OF THE MICHIGAN ELLIOTT-LARSEN CIVIL RIGHTS ACT

111.   PRICE incorporates Paragraphs 1 through 98 of this Complaint.

112.   Title VII prohibits an employer from retaliating or discriminating against an employee because the employee has opposed an unlawful employment practice under Title VII.  42 U.S.C. § 2000e-3(a).

16

113.   The ELCRA prohibits a person from retaliating or discriminating against an individual because the individual has opposed a violation of the ELCRA. MCL § 37.2701(a).

114.   HLS is an employer under Title VII and the ELCRA. 42 U.S.C. § 2000e(b); MCL § 37.2201(a).

115.   It is a violation of Title VII and the ELCRA for an employer to subject an individual to a hostile work environment containing sexual harassment. 42 U.S.C. § 2000e-2(a)(1); MCL § 37.2202(a).

116.   HLS violated Title VII and the ELCRA when it subjected PRICE to a hostile work environment containing sexual harassment.

117.   PRICE opposed HLS's violations of Title VII and the ELCRA by making repeated complaints and reports concerning male HLS employees' sexually harassing conduct to HLS management, including her direct supervisor, Ms. Sanders; the head of her department, Ms. Williamson; and HLS's Human Resources Manager, Ms. Cain.

118.   At all relevant times, HLS had a duty under Title VII and the ELCRA not to retaliate or discriminate against PRICE because of her opposition to HLS's violations of Title VII and the ELCRA.

119.   HLS violated PRICE's civil rights by retaliating against PRICE for her opposition to HLS's violations of Title VII and the ELCRA, which retaliation included but was not limited to:

a.   Reassigning PRICE to a different area in the workplace which placed her in closer proximity to male coworkers who sexually harassed her and which constituted a material alteration of the terms and conditions of PRICE's employment.

b.   Subjecting PRICE to unnecessary, unwarranted, and invasive physical searches and pat-downs of her person by Security Guards after she complained of sexual harassment by a Security Guard.

c.   Attempting to force PRICE to resign her employment.

d.   Terminating PRICE's employment.

120.   As a direct and proximate result of HLS's violations of Title VII and the ELCRA, PRICE has suffered damages, including but not limited to, loss of past and future income and employee benefits, mental anguish, mental and emotional distress, loss of professional reputation, and punitive damages, attorneys' fees, costs, and interest.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter Judgment against Defendant, in whatever amount is shown to be established by the proofs in this cause, including lost past and future wages, lost benefits, mental and emotional

distress damages, loss of professional reputation, and punitive damages, together with interest, costs, and reasonable attorneys' fees.

SOMMERS SCHWARTZ, P.C.

*/s/ Tad T. Roumayah*
Tad T. Roumayah (P74081)
Attorney for Plaintiff
One Towne Square, Suite 1700
Southfield, Michigan 48076
(248) 355-0300

Dated:        April 29, 2026

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN

**EVONNA PRICE,**

      Plaintiff,

v.                                            Case No.
                                                 Hon.

**HUMAN LEARNING SYSTEMS, LLC,**

      Defendant.

_____/

SOMMERS SCHWARTZ, P.C.
Tad T. Roumayah (P74081)
Nathan A. Robbins (P87794)
Attorneys for Plaintiff
One Towne Square, Suite 1700
Southfield, Michigan 48076
(248) 355-0300
troumayah@sommerspc.com
nrobbins@sommerspc.com

_____/

## **DEMAND FOR TRIAL BY JURY**

NOW COMES Plaintiff, Evonna Price, by and through her attorneys, Sommers Schwartz, P.C., and hereby demands a trial by jury relative to the above matter.

                                         SOMMERS SCHWARTZ, P.C.
                                         */s/ Tad T. Roumayah*
                                         Tad T. Roumayah (P74081)
                                         Attorney for Plaintiff
                                         One Towne Square, Suite 1700
                                         Southfield, Michigan 48076
Dated:       April 29, 2026        (248) 355-0300

1